FILED
98 MAY 29 PM 4:0
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHEILA STONE,                    )
                                 )
    Plaintiff               )
                                 )
v.                               )   Civil Action No. CV-97-B-1402-S
                                 )
JVC AMERICA, INC.,               )
                                 )
    Defendant               )

ENTERED
MAY 29 1998

## MEMORANDUM OPINION

Upon due consideration of the pleadings, briefs, and the record, the Court makes the following findings of facts and conclusions of law.

### FINDINGS OF FACTS

In 1987, JVC America, Inc. ("JVC") hired Sheila Stone ("Stone") to work in its assembly department. Within six months, JVC promoted Stone to its packaging department. In 1988, JVC promoted Stone to its coating department where she worked until JVC discharged her in August of 1996.

During Stone's nine year career, JVC disciplined Stone on 10 different occasions. Specifically, Stone was disciplined for the following violations:

| Date | Reason for Discipline |
| --- | --- |
| May 6, 1987 | Excessive Absences |
| July 17, 1987 | Excessive Absences |
| October 21, 1987 | Excessive Tardiness |
| May 26, 1988 | Sleeping on the job |

25

| Date | Reason for Discipline |
|---|---|
| July 16, 1991 | Failure to wear safety glasses at the wash station |
| July 16, 1991 | Sitting in employee locker room and reading a magazine |
| October 26, 1991 | Backing a forklift into a door and overcharging chemical tank |
| May 17, 1996 | Excessive Tardiness and Absenteeism |
| June 24, 1996 | Negligence in spilling paint creating "unsafe and hazardous working conditions" |
| August 5, 1996 | Safety violation: Smoking outside designated smoking area next to tank farm |

In 1995, JVC promoted Danny Anderson to the department manager of the coating department. Since becoming the department manager, Anderson has promoted only two employees to supervisory jobs: Craig Sutton ("Sutton") and Robin Watts ("Watts"). Sutton received his promotion while Stone was employed with JVC. Watts was promoted after Stone was terminated.

If a supervisory position becomes available, the department manager reports the vacancy to shift supervisors who, in turn, announce the vacancy to the employees, accumulate the names of all interested employees and submit the list of the interested employees to the department manager. Employees can also express their interest directly to the department manager. Anderson, as department manager, and Victoria Perry ("Perry"), JVC's human resources manager, would interview all interested employees. Each employee is evaluated based on the interview, previous experience, job performance, work history, and overall leadership ability.

Stone did not apply for the promotion that Sutton received. She knew about the opening but assumed that Sutton already "had the job before he really got it" and therefore decided not to apply for it. Stone also assumed that Anderson knew of her interest in a promotion because she had previously reported her interest to some unidentified managers. Anderson, however, states that he

did not know of Stone's interest in a promotion and therefore did not consider her for the supervisory position.

Anderson identified and chose Sutton using the above-described procedure for filling vacant supervisory positions. Anderson testified that, even if Stone had applied for the supervisory position, he would have rejected her because of her prior disciplinary problems, including excessive absences and tardiness, violating safety rules, and falling asleep on the job.

Stone stated that Anderson said that he had narrowed his choices to "young men." Anderson denied making such a statement.

At the time of the promotion, Sutton had seven years of experience at JVC and did not have any prior disciplinary problems. Anderson considered an employee's demonstrated ability to follow company rules and policies as an essential characteristic of a supervisor.

On July 24, 1996, Anderson received a report that Stone was smoking next to the "tank farm" in an area not designated for smoking. The "tank farm" consists of tanks of highly flammable chemicals with relatively low flash points. It is extremely dangerous to smoke near the tank farm. Because of the seriousness of the allegation, Anderson began an investigation. Three employees of First Source, an independent contractor, and one JVC employee, Brian Fondren, confirmed that they had observed Stone smoking next to the tank farm outside any designated smoking area.

Stone was aware of the danger of smoking next to the tank farm; she also knew that this was a terminable offense. Because of the seriousness of Stone's smoking violation, on August 5, 1996, Anderson terminated Stone for violating this safety rule.

Stone contends that she was fired in retaliation for two comments she purportedly made in the previous year. The first comment was to Mike Wisdom ("Wisdom"), a co-employee. Stone testified that she complained to Wisdom about Anderson's promotion practices. Wisdom did not tell

Anderson or anyone in management about Stone's comments, and, accordingly, they were unaware that Stone perceived Anderson's promotion practices as discriminatory.

The second comment was to Linda Cannon ("Cannon"), Stone's supervisor. Several weeks prior to Stone's termination, she complained about the volume of work the employees in her department had to endure in the summer heat. Stone also assumed that Cannon reported her complaint to Anderson and that Anderson was upset about the comment and retaliated against Stone because of it.

JVC's Vice President of Production, Ron McClenny, makes the final decision to terminate JVC employees. Anderson reported the results of his investigation regarding Stone to McClenny. Because of the seriousness of the violation, Anderson and Perry recommended to McClenny that Stone be terminated. McClenny approved their recommendation, and Anderson terminated Stone on August 5, 1996.

There were no male employees who were caught smoking in the tank farm area and not terminated. Neither Anderson nor McClenny knew of any other employee guilty of that violation.

Stone was one of only two JVC employees whom Anderson recommended for termination. The other employee, who was terminated on August 18, 1995, was male.

Stone filed an EEOC charge on August 22, 1996 alleging discrimination in promotions and retaliatory discharge. She received a Notice of Right to Sue on March 12, 1997, and filed her complaint on June 10, 1997. In her complaint, Stone raises two claims: (1) discrimination in promotion based on her sex and (2) retaliatory discharge.

## **DISCRIMINATION CLAIM**

Based on the Court's findings of fact, it concludes that Anderson's lone statement, even if true, that he had narrowed his choices to "young men" does not, standing alone, constitute direct

evidence of discrimination. *See, e.g., Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993). Accordingly, Stone's discrimination claim rests on circumstantial grounds and therefore should be addressed under the holdings found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). As such, Stone must first establish a prima facie case of discrimination and retaliation. If Stone establishes a prima facie case, JVC then has the burden of production; it must "articulate some legitimate, nondiscriminatory reason" for the failure to promote and a non-retaliatory reason for her discharge. *McDonnell Douglas*, 408 U.S. at 802. If JVC satisfies this "exceedingly light" burden, *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994), Stone must next offer proof that the articulated reason was a mere pretext for intentional discrimination or retaliation. *Burdine* 450 U.S. at 256. Stone's responsibility then is to discredit all of the articulated reasons to avoid summary judgment. *Combs v. Plantation Patterns*, 115 F.3d 1519, 1543 (11th Cir. 1997). The burden of persuasion remains with Stone at all times. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

To establish a prima facie case of discriminatory denial of a promotion, a plaintiff must prove that "he or she is a member of a protected minority, was qualified for and applied for the promotion, was rejected despite these qualifications, and that other employees with equal or lesser qualifications who were not members of the protected minority were promoted." *Roberts v. Gadsden Memorial Hospital*, 835 F.2d 793, 796 (11th Cir.) (citations omitted), *modified* 850 F.2d 1549 (1988). Here, Stone cannot establish a prima facie case. She did not apply for the promotion, she was not qualified for the supervisor's job, and Sutton, who received the promotion, was more qualified for the job.

According to Stone, she never applied for the promotion because she believed that Anderson had already chosen Sutton for the position. Other than her own supposition, Stone has no evidence

(either direct or circumstantial) to support this belief. Here, Anderson followed the same procedures in Sutton's promotion that JVC used in promoting others.

Stone also assumed that, because unidentified managers knew of her interest in previous positions, Anderson knew about her interest in the supervisory position at issue. Significantly, Stone did not speak with Anderson, and since she did not submit a written application, Anderson was not in a position to know that Stone was even interested in the job.

In this case, JVC produced evidence of Stone's discipline from 1987 to 1996. While these dated offenses would not, in and of themselves, demonstrate that Stone was not qualified for the promotion, the fact remains, without question, that Stone's discrimination claim fails because she did not apply for the position for which she complains. Accordingly, Stone's promotion claim is due to be dismissed because of her failure to establish a prima facie case.

## RETALIATION CLAIM

In retaliation cases, a plaintiff must prove the following to establish a prima facie case: (i) Her protected opposition or participation; (ii) An adverse employment action; and (iii) A causal link between the protected conduct and the adverse employment action. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1986). Stone has not demonstrated to this court a causal link between her alleged protected conduct and her discharge because the undisputed evidence reveals that Anderson never knew about her complaint.

Stone's purportedly protected conduct consists of two statements. The first was a statement to Mike Wisdom, a co-employee, to whom she complained about her perception of sex discrimination in Anderson's promotion practices. The second statement was a complaint to Linda Cannon about working conditions in the summer heat.

The second statement is not protected because Stone was not opposing any unlawful employment practice. Title VII makes it unlawful "for an employer to discriminate against ... [an] employee ... because he has opposed any practice *made an unlawful employment practice by this subchapter.*" 42 U.S.C. § 2000e-3(a) (emphasis added). Stone simply complained about working in the heat, not about females being singled out for such work. She complained about conditions to which all of the workers, male and female, were subjected. Accordingly, even if Anderson had discharged Stone for this complaint, her discharge would not violate Title VII.

The first statement was arguably protected because Stone complained about purported gender discrimination regarding promotions. Stone cannot, however, establish a causal link between the alleged complaint and Anderson's actions because there is no evidence that anyone other than Mike Wisdom knew about Stone's complaint. Stone testified that the only person she told was Wisdom, and that she did not know if he told Anderson, or anyone else. Anderson and McClenny reported that they were not aware of her complaint. Their discharge of Stone could not have been in retaliation for a complaint they never even knew about. Because Stone cannot show that her discharge was a result of her complaint, her retaliation claim is due to be dismissed.

Moreover, it is well-settled that violations of company policy constitute legitimate reasons for termination. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir. 1984). Whether it was fair to terminate Stone for the violation is irrelevant for Title VII purposes:

> Title VII is not a shield against harsh treatment in the workplace....Nor does the statute require the employer to have a good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, or for no reason at all, as long as its action is not for a discriminatory reason.

*Nix*, 738 F.2d at 1187 (citation omitted); *see Smith v. Monsanto Chem. Co.*, 770 F.2d 719 (8th Cir. 1985) *cert. denied*, 475 U.S. 1050 (1986).

Even if Stone could prove that she was not smoking in the tank farm area, JVC is nonetheless entitled to summary judgment on her retaliatory discharge claim. An employer's belief, even if mistaken, that the plaintiff violated company policy rebuts an inference of discrimination:

> The law is clear that even if ... [the plaintiff] did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.

*Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

In addition, it is irrelevant whether Stone disputes the witnesses' accounts of where she was smoking. What those witnesses told Danny Anderson is undisputed. Based on their statements, it is clear why Anderson believed Stone was smoking in the tank farm area, and, following company policy, he terminated her. The Court's inquiry is not whether witnesses were telling the truth or whether the plaintiff was actually smoking in the tank farm area, but whether management had a good faith belief that Stone violated company policy, which the Court concludes that it clearly did. *See Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497 (11th Cir. 1991); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

Stone must counter with sufficient evidence of pretext to avoid summary judgment. *See Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). Where, as in the present case, "the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." *Grigsby v. Reynolds Metals Company*, 821 F.2d 590, 597 (11th Cir. 1987). To create a genuine issue of fact as to pretext, Stone must establish that JVC's articulated reason for her termination was false or unworthy of credence and that a retaliatory reason more likely motivated JVC. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 2754 (1993).

Conclusory allegations of retaliation are insufficient; Stone must present concrete evidence of pretext in the form of clear and specific facts. *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1083-84 (11th Cir. 1990); *see Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986).

Here, all Stone offers is her conclusory denial that she was smoking in the tank farm area, which is not enough. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). An honest mistake by JVC is the antithesis of retaliation either at the rebuttal stage or the pretext stage. In *Elrod*, the plaintiff attempted to prove pretext by showing that he actually did not violate company policy. The Eleventh Circuit concluded that such reasoning missed the mark and granted judgment as a matter of law for the employer:

> Elrod may have convinced the jury that the allegations against him were untrue, but he certainly did not present evidence that Sears' asserted belief in those allegations were unworthy of credence.

939 F.2d at 1471. JVC certainly had a good faith basis for concluding that Stone violated company policy, and there is no evidence that any protected conduct influenced the decision to discharge her.

There is also no comparative evidence of pretext which rebuts JVC's articulated reasons. There is no evidence that any other employees (male or female) were observed smoking in the tank farm area and were accorded more lenient treatment for such a violation. *See Jones v. Gerwens*, 874 F.2d 1534, 1541-42 (11th Cir. 1989); *Anderson v. Savage Laboratories*, 675 F.2d 1221, 1224-25 (11th Cir. 1982)

Based on the foregoing reasons, the Court concludes that JVC is entitled to summary judgment on both the discriminatory promotion and the retaliatory discharge claims.

**DONE** this 29th day of May, 1998.

_____
**SHARON LOVELACE BLACKBURN**
United States District Judge